**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **MICHELLE C. SMITH, on behalf of herself and all others similarly situated,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) **Case No.:** _____ ) **JURY TRIAL DEMANDED** ) |
| **R.F. FISHER ELECTRIC COMPANY, LLC,** **Registered Agent:** K & E Services 111 S. Kansas Ave. Olathe, KS 66061, | ) ) ) ) ) ) |
| **Defendant.** | ) |

## COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

**COMES NOW** Plaintiff, Michelle C. Smith, on behalf of herself and all others similarly situated, and for her cause of action against Defendant R.F. Fisher Electric Company, LLC, and states as follows:

### THE PARTIES

1. Michelle C. Smith ("Ms. Smith" or "Plaintiff") resides at 8216 N. Conant Ave., Kansas City, Missouri. She is a former receptionist/administrative assistant for R.F. Fisher Electric Company, LLC who was not paid for all hours she worked and was not paid at the proper rate of pay. Ms. Smith was also terminated for complaining to superiors about wage and hour violations.

2. R.F. Fisher Electric Company, LLC ("Fisher" or "Defendant") is a Kansas electrical contractor with a principle place of business in Kansas City, Kansas.

1

3. Fisher has annual sales that total $500,000 or more and/or is engaged in interstate commerce.

**JURISDICTION & VENUE**

4. Ms. Smith, a Missouri resident, brought this action on behalf of herself and all others similarly situated against Fisher, a Kansas Resident, pursuant to the Fair Labor Standards Act ("FLSA"). She seeks to recover unpaid wages and overtime compensation owed to her and similarly situated workers. Ms. Smith also seeks damages individually based on the harassing and retaliatory conduct of Defendant's supervisors and managers because they harassed her and terminated her employment in retaliation for making good faith complaints of wage and hour violations. Ms. Smith's claims are in excess of $75,000. As such, this Court has federal question and diversity jurisdiction over the action.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Fisher has significant contacts in Missouri.

6. This Complaint is also brought pursuant to the Kansas Wage Payment Act ("KWPA"). This Court has supplemental jurisdiction over Ms. Smith's KWPA claims because the state law claims form part of the same case or controversy under Article III of the Constitution and derive from a common nucleus of operative facts such that they would be expected to be tried in one judicial proceeding.

**GENERAL ALLEGATIONS**

7. On or about December 20, 2015, Ms. Smith was hired by Fisher to work as a receptionist/administrative assistant in the Kansas City, Kansas office.

8. Ms. Smith's rate of pay was $17 an hour. Thus, she was not exempt from the minimum wage and overtime laws.

9. Ms. Smith was employed by Fisher as a receptionist/administrative assistant from approximately December 20, 2015, until approximately March 5, 2017.

10. Fisher employs approximately 200 workers. There are approximately 15 office employees who perform administrative tasks that are integral and indispensable to Fisher. Some of these tasks are performed before, during and after their shifts, for which they are not paid. It is Fisher's policy to not pay for such compensable tasks.

11. Fisher employed Ms. Smith and similarly situated employees as receptionists-administrative assistants or equivalent positions in the Kansas City, Kansas office. Receptionists/administrative assistants were not exempt from the minimum wage and overtime laws because they were paid on an hourly basis.

12. Ms. Smith's job was to answer the telephones and provide other services to Fisher's customers, vendors, and employees.

13. Ms. Smith and other receptionists/administrative assistants were assigned weekly "lunch duty" in which they were required to perform the following tasks: answer phones; empty Keurig trash bin; cleanout/off mug spill catcher of Keurig; restock cups/plastic ware/plates/paper towels as needed; load/unload dishwasher as needed; wipe down counter tops; wipe down/clean microwave; run dishwasher as needed and take out trash around lunch time and in evenings (except on Wednesdays and Fridays).

14. Fisher created a "lunch duty" schedule and would not allow the receptionists/administrative assistants to leave the office if they were scheduled for "lunch duty."

15. Fisher had a policy and practice of requiring Ms. Smith and all other similarly situated employees to perform lunch duty work without compensation.

16. Ms. Smith and all other similarly situated employees routinely worked over forty

3

("40") hours in a work week, but they were not paid premium pay for that work, as required by the FLSA.

17. The net effect of Fisher's policies and practices, instituted and approved by Fisher managers, including CFO Stacy Ryan, was willful. Further, Fisher willfully failed to pay minimum wages and overtime compensation to their receptionists-administrative assistants and willfully failed to keep accurate time records in order to save payroll costs. Fisher enjoyed ill-gained profits at the expense of their employees.

## COLLECTIVE ACTION ALLEGATIONS

18. Ms. Smith brings Count I as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following:

> All persons working as Receptionist and Administrative Assistants for Fisher within the United States for the past three years from the date of this Complaint to the present.

19. The FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b). Plaintiff's consent to join form is attached as Exhibit A.

20. Ms. Smith, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging, among other FLSA violations, Defendant's practice of failing to accurately record all hours worked and failing to pay employees for all hours worked, failing to pay at the applicable minimum wage, and failing to properly pay overtime compensation. The number and identity of other Plaintiffs yet to opt-in and consent to be party Plaintiffs may be determined from the records of Defendant, and potential class members may easily and quickly be notified of the pendency of this action.

## ALLEGATIONS RELATED TO INDIVIDUAL FLSA RETALIATON CLAIM

21. In or about the fall of 2016, Ms. Ryan began harassing Ms. Smith because she

4

was upset that Ms. Smith was late to work due to child care issues.

22. Ms. Smith has a twelve-year-old autistic son and has a difficult time finding child care providers who are able to meet his needs.

23. In October 2016, Ms. Ryan's harassment of Ms. Smith became so severe that it caused Ms. Smith to suffer from an anxiety attack that required Ms. Smith to be hospitalized.

24. On or about January 19, 2017, Ms. Smith reported the hostile work environment to COO, Chris Terrell.

25. Ms. Smith also complained to Mr. Terrell that Ms. Ryan required administrative assistants to perform "lunch duty" and work off the clock. In fact, Ms. Smith forwarded documentation to Mr. Terrell describing the "lunch duty" policies.

26. Ms. Smith asked Mr. Terrell to correct the hostile work environment.

27. On or about February 20, 2017, Ms. Smith returned from a vacation and noticed that some personal items were missing from her work space.

28. Ms. Smith reported the missing items to Mr. Terrell and some co-workers.

29. Ms. Smith later learned that Ms. Ryan had been in her work space while she was on vacation.

30. On or about February 28, 2017, Ms. Smith noticed that someone had written an inappropriate sexual comment on a personal item that was a gift from Ms. Smith's deceased mother.

31. Ms. Smith became quite upset and reported the property destruction to Mr. Terrell.

32. Mr. Terrell told Ms. Smith to take the rest of the day off. Before Ms. Smith left work that day she reported to Mr. Terrell that Ms. Ryan was still harassing her.

33. Mr. Terrell later held a meeting with the accounting department about the destruction of Ms. Smith's personal property.

34. On or about March 3, 2017, Ms. Ryan summoned Ms. Smith to an unscheduled meeting during a day when Mr. Terrell was out of the office.

35. Mr. Bryan Larson, CTO, was also present.

36. During the meeting, Ms. Ryan placed Ms. Smith on a ninety ("90") day Performance Improvement Plan ("PIP") for the stated reasons that she was hostile and fought with customers, vendors and employees and had stolen business records.

37. Ms. Smith denied any wrong doing and told Ms. Ryan that the PIP was retaliatory for her earlier complaints of harassment and for making her work off the clock.

38. During the meeting, Ms. Smith told Ms. Ryan and Mr. Larson that she wanted to speak to Mr. Terrell.

39. Ms. Smith pointed out that all of the dates of her alleged misconduct coincided with dates that she either complained about harassment by Ms. Ryan and/or complained about working off the clock.

40. Mr. Larson agreed with Ms. Smith that the misconduct alleged seemed out of character for Ms. Smith and added, "Michelle always does a great job for me and my customers and my guys [referring to the field employees]."

41. Mr. Larson suggested that they discuss Ms. Smith's complaints, but Ms. Ryan declined.

42. At the conclusion of the meeting, Ms. Smith refused to sign the retaliatory PIP.

43. Ms. Smith also told Ms. Ryan and Mr. Larson that she did not feel well and wanted to go home because she had a sinus infection.

44. Ms. Smith took whatever personal property that remained in her work area home to protect it from further vandalism and in the event that Ms. Ryan later terminated her employment.

45. As soon as Ms. Smith left the office, she texted Mr. Terrell and told him about the retaliatory PIP meeting.

46. Mr. Terrell confirmed with Ms. Smith that she did not resign her positon and she left work because she was sick.

47. Ms. Smith also explained to Mr. Terrell that she removed her personal property from the office because she feared it might be damaged and in the event Ms. Ryan later terminated her employment.

48. Mr. Terrell informed Ms. Smith that she had not been terminated, not to worry and that he would follow-up with Ms. Ryan when he returned to the office on Monday.

49. Mr. Terrell later texted Ms. Smith and told her not to return to the office until after the meeting.

50. Ms. Ryan texted Ms. Smith after she left and claimed that Ms. Smith had quit because she had removed her personal items. She asked Ms. Smith to promptly return the office key.

51. Ms. Smith immediately texted Mr. Larson and reminded him that she had stated during the meeting that she had a sinus infection and was sick.

52. Ms. Smith also asked Mr. Larson to let Mr. Terrell know about Ms. Smith's text message.

53. On or about March 6, 2017, Mr. Terrell called Ms. Smith and said, "Well, the meeting wasn't good. We decided that you are no longer with the company."

54. Mr. Terrell told Ms. Smith that her insurance would be effective through the end of the month and he would try to get her a severance package.

55. In order to obtain the severance package, Ms. Smith was required to sign a release which would extinguish her right to pursue certain employment claims against Fisher.

56. After Ms. Smith refused to sign the release, Fisher challenged (and continues to challenge) Ms. Smith's request for unemployment benefits.

**COUNT I – VIOLATIONS OF THE FLSA FOR FAILING TO PAY ALL WAGES DUE**
**Plaintiff Individually and on Behalf of All Others Similarly Situated**

57. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

58. The acts described above are willful violations of the FLSA.

59. At all times herein, Plaintiff and the class have been entitled to the rights, protections, and benefits provided under the FLSA.

60. Fisher is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in interstate commerce.

61. Fisher violated the FLSA by failing to keep accurate records of time worked and by failing to pay minimum wage and/or overtime.

62. Plaintiff and all similarly situated employees are victims of a common compensated policy designed by CFO, Ms. Ryan, and adopted by Fisher.

63. Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling because Fisher acted willfully and knew or showed reckless disregard in its violation of the requirements of the FLSA.

64. Fisher has acted neither in good faith, nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA. As a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA. Alternatively, should the Court find Defendant acted in good faith in failing to pay its employees minimum wage and overtime compensation, Plaintiff and all other similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rage.

65. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs of this action.

**COUNT II – VIOLATIONS OF THE KWPA**

**Plaintiff Individually and on Behalf of All Others Similarly Situated**

66. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 65 as if fully set forth herein.

67. The acts described above are willful violations of the KWPA.

68. Plaintiff brings this claim on behalf of herself and all individuals who will file consent to join forms in this matter. Fisher violated Kansas law by failing to pay minimum wages and overtime premium pay to Plaintiff and similarly situated employees as required by K.S.A. § 44-313 et seq. as described in detail above.

69. Further, Plaintiff and similarly situated employees are entitled to recover

liquidated damages in an amount equal to their compensatory damages, attorneys' fees and costs.

**WHEREFORE**, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

   a. Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

   b. Declare Defendant's policy of failing to keep accurate time records and not paying Plaintiff and all similarly situated employees minimum wage and overtime illegal under the FLSA and Kansas law;

   c. Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. 216(b) and K.S.A. 44-315(b);

   d. Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

   e. Award Plaintiff and all similarly situated employees attorneys' fees and costs as allowed by law;

   f. Award Plaintiff and all similarly situated employees such other relief as the Court deems just and proper.

### COUNT III – FLSA RETALIATION
### Plaintiff Individually

70. Plaintiff reasserts and re-alleges the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

71. The acts described above constitute retaliation prohibited by the FLSA.

72. Ms. Smith engaged in statutorily protected activity under the FLSA when she complained to Mr. Terrell that Defendant was not paying her all wages due by requiring her to work "lunch duty" without just compensation.

73. Defendant retaliated against Ms. Smith by stealing and damaging her personal property; issuing her an unjustified Performance Improvement Plan; by terminating her employment; and challenging her unemployment benefits.

74. Defendant took the above-mentioned adverse action against Ms. Smith because she engaged in statutorily protected activity under the FLSA.

75. As a direct and proximate result of Defendant's retaliatory conduct against Ms. Smith, she sustained lost wages and other benefits, has been denied the opportunity to be gainfully employed and has suffered emotional upset. As a part of this emotional upset, Ms. Smith could not focus at work, was constantly worried about what might else happen to her at work and was fearful of how she would support herself and her children if she lost her job.

76. The act of disciplining and discharging Ms. Smith for reporting and complaining about FLSA violations constitutes malice or a reckless disregard for Ms. Smith's protected rights.

**WHEREFORE**, Ms. Smith prays for judgment against Defendant on Count III, for a finding that she has been subject to unlawful retaliation prohibited by the FLSA; for an award of liquidated damages; back pay and other benefits; including interest; equitable relief including reinstatement and allowing Ms. Smith to work without being subject to harassing and retaliatory conduct and/or other hostile offensive or intimidating treatment; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert fees and expenses; and for such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Respectfully Submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Michael A. Williams
Michael A. Williams, MO Bar No. 47538
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
(o) 816-945-7175
(f) 816-945-7118

**Attorney for Plaintiff**